F61FBALC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

AUGUSTINA BALU,

                Plaintiff,

            v.                          12 CV 1071 (KPF)

THE CITY OF NEW YORK, et al,

                Defendant.

------------------------------x
                                    New York, N.Y.
                                    June 1, 2015
                                    12:10 p.m.

Before:

                HON. KATHERINE POLK FAILLA,

                                            District Judge

                        APPEARANCES

LAW OFFICE OF FRED LICHTMACHER
     Attorneys for Plaintiff
FRED LICHTMACHER, ESQ.
JESSICA ACOSTA, ESQ.

ZACHARY W. CARTER, Corporation Counsel
for the City of New York
     Attorney for Defendants
JOSEPH ANCI
GLORIA YI
     Assistant Corporation Counsels

F61FBALC

```
 1              (Case called)

 2              (In open court)

 3              THE DEPUTY CLERK:  In the matter of Augustina Balu v.

 4    the City of New York, et al.  Counsel, state your appearances

 5    for the record.

 6              MR. LICHTMACHER:  I am, for the plaintiff, Fred

 7    Lichtmacher.

 8              MS. ACOSTA:  Jessica Acosta.  Good afternoon.

 9              MS. CHEN:  Shun Chen, legal assistant.

10              MS. YI:  Good afternoon, your Honor.  Gloria Yi from

11    the New York City Law Department for defendants.

12              MR. ANCI:  Joseph Anci, also for the defendants, your

13    Honor.

14              THE COURT:  Counsel, let's talk about why we are here.

15    I want to place some things on the record that are

16    appropriately placed on the record so I understand what's going

17    on.  So after I list the sequences of events that I feel

18    comfortable putting on the record I'm going to talk to the

19    parties about what we should do.  As the parties are aware we

20    have a trial.  It is scheduled to begin tomorrow.  We knew at

21    the final pretrial conference -- I received -- I think

22    Mr. Lichtmacher had an inkling that he might be having some

23    issues with his client because he suggested to me that that was

24    the case.  There was also a criminal trial that he had that had

25    to complete and the possibility was that it was not going to be
```

1  complete by today, so we were aware of that.  That trial

2  mercifully moved.  It's merciful for me, maybe less so for him.

3  At or about 4:30-ish on Saturday Mr. Lichtmacher let us know

4  that his client, Ms. Balu, had terminated their relationship

5  and then shortly thereafter there was a message that I received

6  from defendant's counsel sort of appropriately wondering what

7  was going on.

8          As fate would have it the forwarding program we used

9  for the chambers' e-mail account did not forward things that

10  did not have attachments.  We've learned and now you've

11  suffered, unfortunately, as a result.  So when we came in

12  yesterday morning we got the messages and we had the telephone

13  conferences we did and those conferences resulted in me setting

14  this conference and ordering specifically that Ms. Balu

15  participate.  We are now here.  It is twenty minutes after

16  twelve.  She has not arrived.

17          I received a communication from her.  It appears to be

18  Saturday evening at around 7:30 and in that communication what

19  she said to me was that she wanted to talk to me, that she had

20  not fired her attorney but that she wanted additional counsel

21  and that's fine, but today here we are and she was supposed to

22  be here and we just tried to call the callback number she left

23  for us.  It is not saying that the voice mail mailbox is full.

24  It is saying that she is not -- the caller is not receiving

25  calls, which suggests to me -- it can be anything.  I suppose

1  she could have turned off the service, it could be she's turned

2  off the phone.  I can't say.  All I know is the one number she

3  gave me she is not answering, and I have no way of knowing when

4  she's going to answer it.

5        Mr. Lichtmacher, I want you to understand, sir, the

6  predicament I am in or at least the concerns that I have.  We

7  all collectively have been working towards a trial to begin

8  tomorrow.  I certainly want Ms. Balu to have a fair trial.  I

9  want her to be in the best frame of mind in the sense of

10 mentally, emotionally prepared for trial since she, unlike the

11 rest of us in this room, doesn't do it on a regular basis.  I

12 also would like her to explain to me the apparent disconnect in

13 the messages that I have received but I can't get her to be

14 here.  I can't make her come if she will not come.

15       Secondly, sir, I'm sure you appreciate this but I have

16 a defense team who deserves a fair trial as well.  And they

17 have been preparing for months, all right, let's say at least a

18 month for this trial.  And so I want to be understanding of all

19 of the issues that are going on.  So, sir, I want to just hear

20 from you.  What would you like me to know?  Because I think,

21 you suggested to me yesterday -- I don't think this is telling

22 a tale out of school -- but you said you're not ready for trial

23 tomorrow.

24       Now, your client has said she'll appear when she's

25 supposed to appear but she was made aware of this and here she

1   is not here.  So, sir, what should we do?

2           MR. LICHTMACHER:  All communication with my client has

3   broken down.

4           THE COURT:  I'm going to ask you to speak into the

5   microphone, sir because I'm getting this wind coming in.  Go

6   ahead, please.

7           MR. LICHTMACHER:  All communication with my client has

8   completely broken down.

9           THE COURT:  Is this as of Saturday, sir?

10          MR. LICHTMACHER:  I would say Saturday was the nail in

11  the coffin.  I would like to phrase it that way and I'd rather

12  not tell stories, for the obvious reasons.  She's still my

13  client and if she stops being my client there's still

14  privilege.  But all communication has broken down.  Our

15  opportunity to prepare is completely out the window.  I can't

16  prepare a he-said/she-said oriented trial, which this is.  It's

17  a document light trial, with basically one witness saying one

18  thing and another witness saying another thing without a

19  client.  My ability to communicate with my client is

20  non-existent at this point.  My ability to prepare, to give her

21  an adequate trial at this point is non-existent.  I'm at a

22  loss.  I've never had this experience.  I'm at a loss.  She

23  deserves a fair trial.

24          The City's position I absolutely understand,

25  particularly Ms. Yi and I think they've been very tolerant, you

1  know, and I appreciate that, but this is the -- I think the

2  Court has a couple of options, if I may.

3         THE COURT:  I will listen to you, sir.

4         MR. LICHTMACHER:  First of all, tomorrow is absolutely

5  impossible now.  I cannot present plaintiff's case without

6  plaintiff and plaintiff's preparation.  I cannot do that.

7         THE COURT:  I'm going to break down what you just said

8  to me, sir.  Because in theory plaintiff could be here tomorrow

9  because she knows about the trial date, does she not?

10         MR. LICHTMACHER:  She knows about the trial date,

11  absolutely.

12         THE COURT:  And she said to me in her message to me of

13  Saturday evening that she would appear for trial, but, again,

14  conversations have happened since then, so I don't know.  So I

15  guess you're relying on the second part, which is yes, she'll

16  be present but she will have no idea of what this trial is and

17  it will all be foreign to her and she will not be able to do

18  anything.

19         MR. LICHTMACHER:  I think that's pretty close to

20  exactly correct.  Again, it's -- I don't want to go into past

21  history with the client, I don't want to go into conversations

22  I had with her but it's no secret on Saturday we were preparing

23  when she got up and left, said -- I don't think I'll say what.

24         THE COURT:  No.

25         MR. LICHTMACHER:  But she got up and left.

F61FBALC

1     THE COURT:  Can I understand, before Saturday, while

2   there may have been hiccups was she preparing with you for this

3   trial?  I'm just saying, sir, we, some of "we" began in early

4   May, for example, getting together the pretrial order and the

5   motions.  She was aware then that there was a trial, was she

6   not?

7     MR. LICHTMACHER:  Yes, she was.

8     THE COURT:  Okay.  I don't know if you met with her

9   during that period of time.  Okay, I'll take that as a no.

10     MR. LICHTMACHER:  No is not completely correct, but it

11   might as well have been no.

12     THE COURT:  Sir, when we were going through your in

13   limine motions and the pretrial order did you know then that

14   there was a possibility that this was going to happen?

15     MR. LICHTMACHER:  This extreme, no.  Not this extreme.

16   I knew there may be acrimony, but I didn't know it would be

17   this extreme.

18     THE COURT:  Did you believe you were her counsel in

19   early May?

20     MR. LICHTMACHER:  Absolutely.

21     THE COURT:  Did you believe we were going to trial?

22     MR. LICHTMACHER:  Absolutely and I don't want to make

23   a misrepresentation to the Court.  I believed on Saturday that

24   we were going to trial on Tuesday until that happened, and my

25   ability to prepare now is out the window.  It's out the window.

1  I can't do a plaintiff's case without a plaintiff preparing

2  with me.  I just can't do it.  I mean, whatever I have to do to

3  stop this at this point from Tuesday, and I know there's a

4  degree of unfairness.  My suggestion is if the Court can

5  adjourn it for two weeks then one of two things can happen.  We

6  can either straighten this out immediately with the plaintiff

7  or let her get new counsel.

8           THE COURT:  Wait, wait, you have to stop right here.

9  Because here's the thing.  If she gets new counsel, it has to

10  be new counsel who will be ready to do this case in the month

11  of June.  Because you may have noticed your colleague behind

12  you is quite very pregnant.  I already had one attorney in this

13  case replaced because of maternity leave, I'm not having a

14  second one.  Mr. Anci, I presume it's not going to happen to

15  you, sir, so we're safe.  Again, in balancing fairness, if she

16  had come today I certainly would have spoken with Ms. Balu and

17  if she walks in the door now I'll speak with her.  But we're

18  not going out for months and months so she can find new

19  counsel.  That's not a possibility.

20           MR. LICHTMACHER:  Then I suggest the following, if I

21  may suggest to the Court.

22           THE COURT:  I'll take your suggestions.  I'll take

23  suggestions from the back of the courtroom as well.

24           MR. LICHTMACHER:  Here's a suggestion.  Give her a

25  June 15 date.  Order her to come to my office and prepare for

1  trial.  Tell her she must prepare and if the same thing happens

2  again I'm sure the Court will take appropriate measures at that

3  point, but at this point in fairness it's only one time that

4  the thing is really being adjourned with a firm date.  I

5  understand it was pushed back a little bit, but in fairness to

6  her and to everybody, two weeks is not going to kill anybody.

7  I don't think Ms. Yi will be in a more sensitive condition at

8  that point in time and if at that point in time if she refuses

9  your order I'm sure you'll make an appropriate order to do what

10  you have to do, but please give her that time.  Whatever the

11  acrimony is, you know what the situation is with her.  You've

12  read her complaint, you've ruled on summary judgment and we're

13  quite happy with the rulings, we thought they were fair and

14  just.  She alleges extremely serious acts against her.  People

15  destroyed her career, destroyed her health, destroyed her state

16  of mind and I think when we have a client that's this wounded,

17  as she clearly is, you know, that we have to give her just a

18  little bit of leeway.  This is a human being.  She's

19  distraught.  Whether or not she's sending it in the right

20  direction I'll let somebody else decide, but I think you can

21  issue an order and get her in.  It will be a one, two-week

22  delay and at that point in time we'll go forward or the Court

23  will issue an appropriate order.  That's fairness.

24        And the first rule of federal procedure, I don't

25  remember it by heart but it's the swift, just and fair whatever

F61FBALC

1 it is resolution of matters. Forgive me, I don't remember

2 things verbatim usually. And in this case I think in the

3 interests of fairness, in the interests of justice, and this is

4 a justice case, your Honor, these are horrible, horrible

5 allegations about a destroyed life. And I think we have to

6 look at a human being like this in a different light than, say,

7 a corporate entity that's coming in to represent their rights.

8 She should have a little bit of leeway coming in here. I'm not

9 asking you to give it more than once, but she deserves that

10 shot. Order her to come into Mr. Lichtmacher's office, prepare

11 for trial and get ready for trial on June 15. I think that

12 serves the interests of justice.

13 THE COURT: I understand what you're saying. I guess

14 I'm a little reluctant to order someone to prepare. I don't

15 mind encouraging her to prepare, I don't mind saying she may be

16 shooting herself in the foot if she doesn't prepare. Ordering

17 someone to prepare is beyond my pay grade. It seems to me it

18 is her case and she can prepare if she wants to, or she can not

19 prepare. I understand your point. I'm just saying there's

20 something odd about ordering her to do so, so -- yes?

21 MR. LICHTMACHER: In the alternative?

22 THE COURT: Yes.

23 MR. LICHTMACHER: I think if you made it clear to her

24 that -- I hate to say this but I don't know of any other way to

25 do it -- if you make it clear to her that this thing may not be

F61FBALC

1    adjourned again and at that point it could, and I'm not arguing

2    that it should, but it still possibly could be dismissed, I

3    think that's a fair enough shot against the bow that it could

4    get this thing moving quickly.

5        THE COURT:  I would have to give her that notice

6    because that is the next step it would seem.  She has the right

7    to proceed pro se, does she not?

8        MR. LICHTMACHER:  Your Honor --

9        THE COURT:  I'm not saying it's the wisest move for

10   her, but do I not have to let her know that?

11       MR. LICHTMACHER:  I believe it's your -- I don't know

12   it's your responsibility, but certainly she could be informed

13   of that.  That would be a disaster, your Honor.

14       THE COURT:  Sir, I won't opine on that one way or the

15   other.  I'll just note again, this is in line with your thought

16   about directing her to appear with you.  Again, I'm not saying

17   it is the wisest, most rational thing for her to do, but I

18   don't think I can order her to be with you.  I think I have to

19   let her know that her choices in this matter may -- may,

20   because I haven't issued the order yet, may be working with you

21   and your firm or going pro se or finding an attorney that will

22   do this case in the two-week period you're suggesting, and I'm

23   not sure that attorney exists.

24       Okay, I understand.  May I hear please from the folks

25   in the back table?  Thank you.  Mr. Anci?

F61FBALC

1       MR. ANCI:  Yes, your Honor.

2       THE COURT:  I will listen to you about anything

3   including your response to Mr. Lichtmacher's suggestion.

4       MR. ANCI:  Sure, your Honor.  First is to note I agree

5   with the Court and I would emphasize I don't think it's

6   appropriate that the Court issue an order that Ms. Balu prepare

7   for this trial.  As the Court pointed out, there's a much

8   bigger difference between the plaintiff not wanting to prepare

9   and not appearing.  If she's willing to appear I understand the

10  difficulties it might make for Mr. Lichtmacher to present the

11  case, but if that's the way -- this is her case, these are her

12  claims, if that's the way she wishes to proceed then it would

13  be prejudicial to the defendants and the witnesses we've lined

14  up and met with numerous times to further postpone this.

15      For the record, two weeks is not good.  Lieutenant

16  McCauliff is not going to be around.  We've gathered dates from

17  all of our witnesses that we have identified to see who would

18  be available.  Lieutenant McCauliff is not around.  He's on

19  vacation the week of June 15 which means that in order to

20  prepare for a trial the following week we would have no access

21  to him the week before that.  And there are other witnesses

22  that have conflicts as well including the week of July 13 for

23  Lieutenant McCauliff, July 6 to July 10 --

24      THE COURT:  Let's not go into July.  Unless Ms. Yi is

25  interested in going into July, I'm not interested in going to

F61FBALC

1    July.

2         MR. ANCI:  I'm just saying with regards to our witness

3    conversations.

4         THE COURT:  I appreciate that.  In the month of June,

5    other than this week, we have the week of the 8th, 5th, 22nd

6    and 29th.  I in theory have to be in upstate New York for the

7    judicial conference next week but if that's the only week

8    everybody is available, I'll do it.  I'll skip that and stay

9    here.  Are your witnesses available the week of the 8th?

10         MR. ANCI:  I believe our witnesses are available the

11   week of the 8th and it looks like they would also be available

12   the week of the 29th, the very last week in June.  Those are

13   the only weeks in June that have June dates that I believe our

14   witnesses will be available and that both Ms. Yi and I will be

15   available as well.

16         THE COURT:  I'm going to go off the record

17   momentarily.

18         (Discussion off the record)

19         THE COURT:  Back on the record.  Mr. Anci, so on the

20   15th, Lieutenant McCauliff is out.  On the 22nd is he available

21   except for the fact you would not be able to prepare him as

22   much as you would like?

23         MR. ANCI:  Exactly.  I don't believe he's getting back

24   until the 20th or 21st.  We would have no opportunity to

25   prepare with him or even prior to appearing on the 22nd I

1   believe it is for trial.

2           THE COURT:  Okay.  Other than on the week of the 22nd,

3   who else is not available?

4           MR. ANCI:  I believe that's it the week of the 22nd,

5   just defendant McCauliff.

6           THE COURT:  In theory, sir, if we began on, and,

7   again, I'm just spitballing right now, if we began on the 23rd,

8   you have the Monday, the Tuesday and maybe the Wednesday.  We

9   could take him out of order.  Is that something that is doable?

10  Let's make clear, sir, not optimal but doable.

11          MR. ANCI:  Optimally the defendants would like to

12  start on the 29th.  This should be a short trial.  We should be

13  done before the 4th of July weekend, so I don't see that being

14  an issue.

15          THE COURT:  Okay.  You also said the 8th.  I'm going

16  to talk about the 8th in a second.  One moment,

17  Mr. Lichtmacher.  I want to be sure I get all of Mr. Anci's and

18  Mrs. Yi's concerns before me before I talk again to you.

19          Any other issues?

20          MR. ANCI:  There was an order for Ms. Balu to attend

21  this conference today and given the late notice of the issues

22  between plaintiff's counsel and plaintiff and the fact that she

23  has essentially disobeyed a court order to appear here today we

24  do think that a 41(b) either ruling from your Honor or motion

25  from defendants is appropriate.  Again, as I mentioned on the

F61FBALC

1    call yesterday I think we may reserve our right to make any

2    sort of motion for costs, as both Ms. Yi and my time has been

3    burdened to the detriment of the City and the other cases that

4    we work on as well as these police officers that we met with,

5    whether they've received overtime for meeting with us or

6    someone else had to be pulled to cover their posts while they

7    met with us for trial prep.  There is costs and people

8    sometimes look at the City and there are no costs in anything

9    going forward, they're a big entity, but there are costs

10   attributable to the preparation of this action.

11              THE COURT:  Thank you.  Mr. Lichtmacher, let me hear

12   from you on this.  I had suggested to the parties yesterday the

13   15th because my other trial had moved.  I also didn't

14   necessarily want to foreclose my appearance at the judicial

15   conference, but I can.  So is one week enough?  It is enough

16   for your client, is it not, sir?

17              MR. LICHTMACHER:  The 15th we're talking about?

18              THE COURT:  No, to the 8th, sir.  One week from today.

19   What I'm told is Lieutenant McCauliff is not available on the

20   15th.

21              MR. LICHTMACHER:  The 8th I will make work for me and

22   my office, but without Ms. Balu here I have the -- you

23   understand that.

24              THE COURT:  I do.

25              MR. LICHTMACHER:  I don't have to fill in the blanks,

1  but I will move what I have the week of the 8th and make that

2  work and I'll do my best.  I mean, I'll move everything around.

3  Just for the record, the week of the 22nd would be difficult.

4  On the 25th I have something, an extremely serious beating, a

5  woman lost both her breasts, a beating by the Police

6  Department, that I have to appear.  She moved her life around

7  to be at a mediation that day.

8          I mean, my office -- Ms. Acosta, you're good?  We have

9  no choice.  If the Court wants us to come on the 8th, we will

10  do everything in our power, by that I mean the law firm that I

11  have, the people who are at this table, Ms. Acosta and

12  Ms. Chen, we will be here and be as prepared as we can and we

13  would love to have this in writing that the date will be the

14  8th so we can, if it is going to be, so we can serve it on our

15  client.

16          THE COURT:  Let me ask you this, sir.  There was an

17  order I issued yesterday.  Because of the vagaries of the

18  docketing clerks I e-mailed it to the parties.  Did you receive

19  a copy of the order, sir?

20          MR. LICHTMACHER:  Ms. Acosta did.  We did.  Yes.  I

21  received it, too.  Ms. Acosta forwarded it to Ms. Balu.

22          THE COURT:  That's what I wanted to ask about.

23  Ms. Balu has some telephone issues right now but she has a

24  separate e-mail account, correct, a G-mail account to which

25  certain things could be forwarded.

1      MR. LICHTMACHER:  I think it was texted to her.

2   Ms. Acosta can speak to it and I would urge the Court to keep

3   in mind that there have been electric issues and internet

4   issues.  For instance, my office when I left it this morning

5   had no internet.  Time Warner cable was having problems and it

6   is possible Ms. Balu did not get it.  So I think before the

7   Court issues any orders regarding contempt, which we don't

8   believe it should issue, it should at least hear Ms. Balu's

9   side of the thing.  I understand they came in, but I don't have

10  the tremendous sympathy for the City, on its one day coming

11  into court and a one-week extension, adjournment, that they

12  seem to think they deserve.  This is a woman who is disabled,

13  has no income, has two kids by herself.  How much beating up

14  are we going to do on this lady?

15      THE COURT:  Okay.  Ms. Acosta, I wasn't being as

16  contemptuous as your colleague thinks I was.  I was actually

17  trying to ask him a more important housekeeping question, which

18  was if I issue this order today how will I know she will get a

19  copy of it.  So what I was trying to find out was how did you

20  send the order to her yesterday?  Does she have an e-mail

21  address you are aware of?

22      MS. ACOSTA:  She does have an e-mail address.  I

23  didn't send the order via e-mail because I was at home when I

24  sent the order so the order got sent via e-mail yesterday, so I

25  texted her and I called her.  When I called her she did have

F61FBALC

1    service but I don't know if she got the text message of the

2    attachment of the e-mail.

3        THE COURT:  Since we know she has e-mail can we

4    understand that when the order is issued, I don't know when,

5    later today, that you will be able to e-mail it to an e-mail in

6    addition to whatever texting you want to do?

7        MS. ACOSTA:  Yes we can.

8        MR. LICHTMACHER:  On top of that, if I may, I can have

9    somebody run out there and deliver it so there is no doubt it

10   gets to her house or I will send it certified mail, whatever

11   your Honor wants, but we will guarantee on this type of notice

12   that she will be able to get it within a day.

13       THE COURT:  All right.  I think that's where I'm

14   inclined.  Let me talk to the parties about something that's

15   been occupying my thoughts since yesterday.  As I mentioned at

16   the beginning of this, I wanted to be sure both sides are

17   treated fairly and I'm sure the parties are aware of that.  The

18   issue that I have is I'm willing to move this conference --

19   this trial, this everything, if there was a possibility of

20   having a conference with her, I would love to because I would

21   like to sit with her and explain to her what trial is and if

22   she's having problems with you, and she may still have problems

23   with me as well, I just think that some other person should

24   talk to her and let her know before she does something foolish

25   that has a prejudicial impact on her case.  That said, I am

1    sympathetic to the City as well because they have been working

2    for weeks at getting this case together and they're now going

3    to have to reset the pieces with everyone.  So here's what I'm

4    doing.  In order to be fair to everyone I will move the trial

5    date to the 8th of June, but the record for trial is as it is

6    at this moment.  So there's not going to be any additional

7    document productions or any additional marking of exhibits.  If

8    things were done correctly, then they are done correctly for

9    trial.  If things were done incorrectly then that is the way

10   the cookie is crumbling.

11           So why I'm doing that is not at all to penalize

12   Ms. Balu but to address the issue that was brought to me which

13   is that she now is having problems with her counsel.  This week

14   gives her a chance to connect with her counsel, to talk with

15   her counsel and to work that out.  There were no other issues.

16   Obviously the Lichtmacher firm has been working towards a trial

17   so I don't have to worry about that, and so that's the way it's

18   going to work out.  If we had things that I kept out, they're

19   being kept out.  If there are things I let in, I'm letting them

20   in.  But we're using this week to get Ms. Balu to the point

21   where she decides whether she wants to be a participant in her

22   trial or not and not for anything else.

23           So I'm going to see the parties Monday morning at

24   9:00 a.m.  We have tried to reach out to Ms. Balu.

25   Mr. Lichtmacher, I really, you know, I had hoped she would have

1  come today, I know you did as well, because I really did want

2  to sit with her and get a sense of how emotionally and

3  psychically stable she is.  I guess we'll have to figure that

4  out in the next week.  But that's what I'm going to do and I'm

5  going to issue an order that's very carefully worded.  It may

6  take me a little time to put it together but it will come out

7  this afternoon and, Ms. Acosta, I know as soon as you get it

8  you will get to it your client.  I said yesterday on the phone,

9  I think I mentioned the marshals service.  If not I mentioned

10 it privately in chambers.  I'm not going to do that.  If she

11 doesn't want to come to her trial, she doesn't want to come to

12 her trial.  I hope it doesn't get to that point.

13          Anything else, Mr. Lichtmacher?

14          MR. LICHTMACHER:  No, your Honor, and thank you for

15 that last portion.  It's appreciated.

16          THE COURT:  Mr. Anci?

17          MR. ANCI:  Yes, your Honor.  Our only concern is,

18 obviously, since Ms. Balu is not here and it seems nothing has

19 been resolved between Ms. Balu and her attorney, we don't know

20 if we may be going through this again on Friday or Saturday

21 that now it's official the Lichtmacher firm has been terminated

22 at this point.

23          THE COURT:  To be clear, my order is going to provide

24 that she either does this case with the firm, that she tells me

25 she has not fired, that she does this pro se with no

F61FBALC

adjournments or she does this with another law firm which,

again, is a theoretical possibility and nothing else.  That's

what she's got.  Those are her choices.

Now, I will tell the folks at the plaintiff's table

and they know this, if for whatever reason she's just not going

to appear, if Wednesday comes around, Thursday comes around and

nothing has happened, then I think you ought to let us know so

we can be prepared for Monday morning.  Also, Mr. Anci, I'll

just ask, because this is the judge in me, is the City open to

continued settlement discussions if that's where she wants to

go?

MR. ANCI:  By using the term "continued," your

Honor --

THE COURT:  That implies they began.  Is the City open

to resolving this case short of trial?

MR. ANCI:  We would be and I will give Mr. Lichtmacher

credit, he has spoken to us about it.  However, there's never

been what I think we or most people would consider a reasonable

demand from the plaintiff.  So that would forestall any

settlement discussions.  If he comes to us we're more than

happy to have that discussion with him about resolving the

case.

One final issue to hopefully expedite the trial if it

goes forward on Monday.  We were to have a discussion tomorrow

morning at 9:00 a.m. about the last lingering medical records

F61FBALC

1    issue.  I was wondering or hoping to resolve that today so we

2    don't have to waste time doing that on Monday the 8th.

3         THE COURT:  I'm standing by my prior language in the

4    endorsement, in the order, which is anything that was produced

5    after our pretrial conference on the 22nd is not going to be

6    admitted as an exhibit.  It is too late.  On the issue of the

7    certifications, to the best of my understanding they are

8    incomplete.  They are they're missing the language about where

9    the information came from.  So if the parties show me case law

10   that that actually is okay,then I will let them in and we'll

11   talk about what parts of it, but those certifications as they

12   now stand do not contain the recitals about where the

13   information came from.  Yes, Mr. Lichtmacher.

14        MR. LICHTMACHER:  Your Honor, those recitals are I

15   believe verbatim from Bellevue Hospital, a City hospital that I

16   on numerous occasions have been able to enter into evidence in

17   this court.  I believe they're verbatim.  Ms. Chen knows.

18   Right?  They're verbatim from the Bellevue Hospital

19   certification.  I'm a little surprised at your Honor's ruling

20   at this point.  We have always relied on that same

21   certification.

22        THE COURT:  But, sir, my order Friday said

23   specifically that I didn't think it was complete.  Did you see

24   my order on Friday?

25        MR. LICHTMACHER:  I did and we respectfully disagree

1  with it.  However, at least if we get the chance to argue it or

2  argue it on papers we appreciate it.  Again, on so many

3  occasions, on literally thousands of occasions that exact

4  certification has been accepted by this Court, by this

5  courthouse.  Not to, I don't want to be too argumentative but

6  we feel pretty secure that this is the type of thing that is

7  randomly done.  We understood your initial order and we didn't

8  disagree with it and if you remember, we had our arguments.  I

9  did not sit here with a straight face that those certifications

10  met the Federal Rules.

11          THE COURT:  No, but I guess I don't understand why if

12  the language of the rule has that extra piece in there about

13  where this information is coming from, why that couldn't have

14  just be added into the certification.  I will take note this is

15  what Bellevue is using, but I don't understand why you can't

16  just track the rule.

17          MR. LICHTMACHER:  Your Honor, we believed that we were

18  and we believed that even if it's not verbatim within the

19  meaning of the rule it's exactly there.  I wish I had it in

20  front of me now.

21          THE COURT:  You'll write to me in the next 24 hours

22  about why they're coming in.

23          MR. LICHTMACHER:  Thank you.

24          MS. ACOSTA:  Your Honor, just for clarification, are

25  we not doing arguments tomorrow morning or we are?

F61FBALC

1    THE COURT:  No, we're not doing oral arguments.  This

2    is it.  This is it.

3    MR. LICHTMACHER:  Your Honor, the other thing is, in

4    the interests of justice, these records, they're clearly

5    intended --

6    THE COURT:  Mr. Lichtmacher, I have been as indulgent

7    as I am going to be today.  Twice I have allowed you to give me

8    client certifications.  You have to show me that the second one

9    is compliant.

10    MR. LICHTMACHER:  We will do that.

11    THE COURT:  Anything else?

12    MR. ANCI:  No, your Honor.

13    MR. LICHTMACHER:  For the compliance certifications

14    we're having a little bit of a problem with the Internet today

15    so we could have until the end of the today tomorrow to get

16    those to you?

17    THE COURT:  Yes.

18    MR. ANCI:  Your Honor, it's not compliance

19    certifications, the third certification, it's the argument.

20    THE COURT:  He means the argument as to why the second

21    one is good.  All right, then we're done.  Someone --

22    "someone," that would be the plaintiffs, should get a copy of

23    this transcript.

24    All right, thank you.

25    (Adjourned)