UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

AUGUSTINA BALU,

                              Plaintiff,

              v.

THE CITY OF NEW YORK and DENIS
McAULIFFE, individually and in his official
capacity as an employee of the
New York City Department of Police,

                              Defendants.

------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 8, 2016

12 Civ. 1071 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

In February 2012, Plaintiff Augustina Balu brought suit against the City

of New York and her former supervisor at the New York City Police Department

(the "NYPD"), Denis McAuliffe (with the City, "Defendants"), claiming that she

had endured sexual harassment while an NYPD officer and, further, that she

had suffered retaliation after opposing McAuliffe's sexual advances.  In her

complaint, Plaintiff advanced claims for discrimination and retaliation under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the

New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297; and the New

York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131 (the

"NYCHRL").

Trial on Plaintiff's claims under Title VII and the NYCHRL began on

June 9, 2015.  On June 12, 2015, the jury returned a verdict in Plaintiff's favor

on her discrimination claims, and in Defendants' favor on her retaliation

claims.  The jury awarded Plaintiff $300,000 in compensatory damages against both Defendants, and $25,000 in punitive damages against Defendant McAuliffe.  Neither side filed a post-trial motion contesting the verdict or the trial pursuant to Federal Rules of Civil Procedure 50 or 59.

Plaintiff now seeks attorneys' fees in the amount of $209,969.17 and costs in the amount of $3,330.99 as a prevailing party under Title VII and the NYCHRL, for an aggregate figure of $213,300.16.  Defendants do not contest that Plaintiff is a prevailing party, but argue that the award should be reduced for various reasons to $151,049.07.  For the reasons set forth in the remainder of this Opinion, the Court will award attorneys' fees in the amount of $168,602.30, and costs in the amount of $3,330.99.

## DISCUSSION[1]

## A.   Fee Awards in Employment Discrimination Cases

Both Title VII and the NYCHRL authorize the award of attorneys' fees and costs to prevailing parties.  *See* 42 U.S.C. § 2000e-5(k) (allowing "a reasonable attorney's fee (including expert fees)" to prevailing parties under Title VII); N.Y.C. Admin. Code § 8-502 ("In any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees.").  A district court has discretion to determine the

---

[1]     Plaintiff's memorandum in support of her motion for fees and costs is referred to as "Pl. Fee Mem." (Dkt. #120); Defendants' opposition is referred to as "Def. Fee Opp." (Dkt. #124); and Plaintiff's reply brief is referred to as "Pl. Fee Reply" (Dkt. #126). Declarations submitted in connection with the parties' memoranda of law are referred to using the conventions "[Name] Decl." and "[Name] Reply Decl."

amount of attorneys' fees that would be appropriate to satisfy a fee award.
*Hensley* v. *Eckerhart,* 461 U.S. 424, 437 (1983); *see also* Fed. R. Civ. P. 54(d).

To determine the amount of attorneys' fees to which a party is entitled, a court must calculate the "presumptively reasonable fee," often (if imprecisely) referred to as the "lodestar." *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *County of Albany* ("*Arbor Hill*"), 522 F.3d 182, 183, 189-90 (2d Cir. 2008); *accord Millea* v. *Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).[2] This amount reflects "the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  Courts calculate the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the reasonable hourly rates. *Millea*, 658 F.3d at 166.[3]

---

[2]     As noted by this Court in a previous opinion, *see Echevarria* v. *Insight Med., P.C.*, 102 F. Supp. 3d 511, 516 n.2 (S.D.N.Y. 2015), the Supreme Court's subsequent decision in *Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), called into question certain factors first articulated by the Fifth Circuit and relied upon by the *Arbor Hill* Court.  *See Perdue*, 559 U.S. at 551 (stating that factors in *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989), "gave very little actual guidance to district courts").  However, *Arbor Hill* remains the standard in this Circuit.  *See, e.g.*, *K.L.* v. *Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 18 (2d Cir. 2014) (summary order) ("In determining an appropriate hourly rate, 'the district court should consider, among others, the *Johnson* factors.'" (quoting *Arbor Hill*)).  Therefore, this Court has considered both *Arbor Hill* and *Perdue* in resolving the instant motion.

[3]     Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" *Millea* v. *Metro-N. R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011 (quoting *Perdue*, 559 U.S. at 553).  In "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Id.* at 167 (quoting *Perdue*, 559 U.S. at 5541).  Ultimately, as described in the text, the Court saw no basis for further adjustment in this case.

In reviewing a fee application, a district court must examine the particular hours expended by counsel with a view to the value of the work product to the client's case. *See Lunday* v. *City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (per curiam). The court is to exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see generally Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) ("In assessing the reasonableness of attorney's fees, a court looks to the amount of time spent as reflected in contemporaneous time records, and then decides how much of that time was 'reasonably expended.' If the district court finds that some of the time was not reasonably necessary to the outcome of the litigation, it should reduce the time for which compensation is awarded accordingly." (citations omitted)).

A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. *N.Y.S. Ass'n for Retarded Children, Inc.* v. *Carey* ("*Carey*"), 711 F.2d 1136, 1147-48 (2d Cir. 1983).

## B.   Calculating the Attorneys' Fees

### 1.   Overview

The instant fee application comprises submissions from two separate law firms; this disunion has led to some confusion in the parties' math. Initially, Plaintiff filed a single supporting memorandum along with various sworn statements, seeking a total of $200,642.71 in attorneys' fees and costs. (Dkt.

#118-120).  This figure purported to include the fees expended in preparing the fee application.  In point of fact, however, only one of the attorneys had listed the actual amount of time expended preparing her materials (Dkt. #120-3); a second attorney offered only an estimated amount of time for preparing and defending the application (Dkt. #120-1); and the third attorney waited until filing a separate reply brief to detail the time spent preparing the application (Dkt. #125).

Defendants (understandably, based on the Court's review of these same records) perceived various inconsistencies among the billing records, including differences in billing rates for the same attorney and instances in which administrative tasks were billed at normal attorney rates.  (*See, e.g.*, Def. Fee Opp. 3-5).  Plaintiff's counsel responded with two sworn statements and several charts that sought to clarify the issues raised by Defendants and, where counsel agreed with Defendants' objections, to adjust the fees sought accordingly.  (Dkt. #125-127).

In her reply submission, Plaintiff purports to seek "a total award of fees and costs of $202,667.71."  (Pl. Fee Reply 4).  Yet even this figure is incorrect, as it fails to account for the fees sought by the third attorney for preparing his portion of the fee application.  (*See* Dkt. #125-126).  In consequence, the Court has reviewed all of the materials submitted in connection with Plaintiff's

application for fees and costs and understands them to be seeking a total

award of $213,300.16, calculated as follows[4]:

- Fred Lichtmacher seeks fees for 180.1 hours billed at an hourly rate of $525 (of which 174.08 hours are contained in his own billing records and 6.02 hours were recorded on his behalf and contained in the billing records of Matthew Flamm). Mr. Lichtmacher further seeks to recover for 2.25 hours of travel time at one-half his normal rate. Finally, Mr. Lichtmacher appears to seek fees for 13 hours at his normal rate for time spent preparing the fee application.

- Jessica Acosta seeks to recover fees for 130.12 hours for pretrial and trial work billed at an hourly rate of $225; 2.32 hours for travel time billed at one-half of her normal rate; 1.35 hours for administrative tasks billed at $85 per hour; and 3.82 hours for preparing the fee application at her normal rate.

- Matthew Flamm sees to recover fees for 142.11 hours for pretrial work billed at an hourly rate of $400; 4.13 hours for travel time billed at one-half of his normal rate; 0.75 hours for administrative tasks billed at $100 per hour; and 26.2 hours for preparing the fee application at his normal rate.

- Three paralegals seek to recover fees for a total of 115.81 hours of pretrial and trial work at an hourly rate of $80.

- Finally, Plaintiff seeks litigation costs in the aggregate amount of $3,330.99.

### 2. Determining the Reasonable Hourly Rates

#### a. Applicable Law

A reasonable hourly rate represents what "a reasonable, paying client

would be willing to pay," and varies by both practice area and location. *Arbor*

---

[4]    In arriving at these figures, the Court rounded to the nearest hundredth (for hours) or penny (for dollars) and rounded half-figures to even.

*Hill,* 522 F.3d at 184, 192.[5]  It is determined with reference to current market rates (i.e., rates as of the time of the fee application) "for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum* v. *Stenson,* 465 U.S. 886, 896 n.11 (1984).

A court's determination of a reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," and may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district."  *Townsend* v. *Benjamin Enter., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko* v. *Clinton County of New York,* 433 F.3d 204, 209 (2d Cir. 2005)).  The Second Circuit has further suggested that courts consider

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184.

---

[5]   The relevant community is the district in which the court sits.  *Farbotko* v. *Clinton County of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (citing *Polk* v. *N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

### b.   Determining Reasonable Rates for the Attorneys

#### i.   Fred Lichtmacher

Fred Lichtmacher, lead trial counsel for Plaintiff in this matter, seeks an hourly rate of $525.  In support, he has submitted his own declaration setting forth his credentials and experience (Dkt. #120-1 ("Lichtmacher Decl."), as well as corroborating declarations from two attorneys (Dkt. #120-11, 120-12), and a judicial award in a separate litigation (Dkt. #120-13).  Mr. Lichtmacher opines that the instant litigation was peculiarly difficult, and that his skills at cross-examination and summation were thus critical to Plaintiff's trial success. (Lichtmacher Decl. 3).  Defendants respond by identifying inconsistencies in Mr. Lichtmacher's billing records, and focus in particular on entries for his time that appear in the billing records of former co-counsel Matthew Flamm at rates of $400 and $450 per hour; Defendants argue from these that a reasonable hourly rate for Mr. Lichtmacher would be $425.  (Def. Opp. 3-4; *see also* Dkt. #120-4 ("Flamm Decl.") (attaching billing records)).

Mr. Flamm sought to clarify the matter in reply, noting that the prior rates were based on a fee schedule prepared four years earlier in a different case.  (Dkt. #125 ("Flamm Reply Decl.") ¶¶ 3-7).  While the Court appreciates the clarification, it disagrees with Defendants to the extent they are suggesting that historical rates should guide the Court's determination.  "The rates used by the court should be current rather than historic hourly rates."  *Reiter* v. *MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks and citation omitted); *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 764

(2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment"); *cf. Mugavero* v. *Arms Acres, Inc.*, No. 03 Civ. 5724 (PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (discussing use of current versus historic rates).  The rate to be determined will be a current one.

After considering Mr. Lichtmacher's experience and prior successes in the area of civil rights litigation, the positive manner in which the jury in the instant trial reacted to him, and recent attorneys' fees decisions, the Court concludes that a reasonable hourly rate for Mr. Lichtmacher is $450.  *See, e.g.*, *Abdell* v. *City of New York*, No. 05 Civ. 8453 (RJS), 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (awarding fees to attorneys for prevailing plaintiffs in civil rights action ranging from $100 to $650, where action persisted for nearly five years); *Charles* v. *City of New York*, No. 13 Civ. 3547 (PAE), 2014 WL 4384155, at *3-4 (S.D.N.Y. Sept. 4, 2014) (awarding $450 hourly rate in civil rights action to attorney with 24 years of experience); *Spencer* v. *City of New York*, No. 06 Civ. 2852 (KMW), 2013 WL 6008240, at *4-5 (S.D.N.Y. Nov. 13, 2013) (awarding $400 hourly rate in civil rights action to attorneys with 10 and 20 years of experience, respectively, finding rate to be "in line with the hourly rates set for attorneys with similar experience and backgrounds in this forum" (collecting cases)); *Greene* v. *City of New York*, No. 12 Civ. 6427 (SAS), 2013 WL 5797121, at *4 (S.D.N.Y. Oct. 25, 2013) (observing that "precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys [in the 10 years prior to a 2008 survey] have ranged from $250 to

9

$600"; concluding that "the rate of $375 per hour is on par with rates charged by seasoned civil rights solo practitioners with comparable experience," for attorney with nearly 20 years of experience); *cf. Tatum* v. *City of New York*, No. 06 Civ. 4290 (PGG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) (awarding fees at hourly rates of $400 and $450 for attorneys with 10 and 23 years of experience, respectively; finding that "consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time" (quotation marks and citation omitted)).

### ii.    Jessica Acosta

Jessica Acosta, who assisted Mr. Lichtmacher at trial and in pretrial proceedings, seeks an hourly rate of $225.  To that end, Ms. Acosta has filed an affirmation explaining her employment experiences during her two years of practice (Dkt. #120-3 ("Acosta Decl.") ¶ 2); Mr. Lichtmacher has also vouched for Ms. Acosta's significance to the instant litigation (Lichtmacher Decl. 2; Pl. Fee Reply 2-3).  In response, Defendants cite Ms. Acosta's junior associate status and "minimal" involvement at trial as bases for a reduction in rate.  (Def. Fee Opp. 6).

The Court observed firsthand the diligent and professional manner in which Ms. Acosta conducted herself throughout the litigation, and, equally importantly, the organization she brought to Plaintiff's trial team.  That said, Ms. Acosta is still quite junior, and in light of the Court's review of the record

and Ms. Acosta's submissions, the Court will reduce her hourly fee slightly, to $200. *Compare Salama* v. *City of New York*, No. 13 Civ. 9006 (PKC), 2015 WL 4111873, at *2 (S.D.N.Y. July 8, 2015) ("Rates for junior associates are typically in the $150-200 per hour range." (citing, *inter alia*, *Black* v. *Nunwood, Inc.*, No. 13 Civ. 7207 (GHW), 2015 WL 1958917, at *6 (S.D.N.Y. Apr. 30, 2015) (stating that "courts have typically awarded rates in the range of $175-200 to associates with three years' experience," and awarding rates of $150 for associates with less than one year's experience); *Spencer*, 2013 WL 6008240, at *6 (finding $200 per hour reasonable for a lawyer who worked on the case as a second- and third-year associate)).

### iii.    Matthew Flamm

Mr. Flamm, who was involved in the litigation through summary judgment, seeks a $400 hourly rate.  He supports his request with affirmations from himself and a colleague in the area of civil rights litigation.  (*See* Flamm Decl.).  While Defendants challenge the number of hours for which Mr. Flamm seeks compensation, they do not challenge the reasonableness of the hourly rate he seeks.  For this reason, the Court will not adjust the rate sought, and will award fees to Mr. Flamm at a rate of $400.

### c.    Determining Reasonable Rates for the Paralegals

Plaintiff seeks compensation for three paralegals who worked on the case at various points, at an hourly rate of $80.  (Pl. Fee Br. 6-7).  Each of the paralegals — Shelly Chen, Julian Giraldo, and Norman Chuk — has submitted an affidavit detailing his or her work on the case.  (Dkt. #120-5, 120-6, 120-7).

Defendants do not object to this rate and the Court agrees, noting that it fits comfortably within the range of rates awarded to paralegals in civil rights actions.  *See Andrews* v. *City of New York*, 118 F. Supp. 3d 630, 642 (S.D.N.Y. 2015) (discussing reasonable rates for paralegals).

### 3. Determining the Hours Reasonably Expended

#### a. The Fees Sought and the Reductions Proposed

The next step in the Court's analysis is to determine whether the hours expended by Plaintiff's counsel were reasonable, a determination compounded by the inconsistencies discussed above.  In support of the fee application, the attorneys and paralegals have submitted summaries of time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Carey*, 711 F.2d at 1148.  According to these records — and excluding any time spent preparing the fee application, which is discussed separately *infra* — Fred Lichtmacher spent 182.35 hours on this litigation, Jessica Acosta spent 136.59 hours on this litigation; Matthew Flamm spent 146.99 hours on this litigation; Shelly Chen spent 92.68 hours on this litigation; Julian Giraldo spent 14.8 hours on this litigation; and Norman Chuk spent 8.33 hours on this litigation.  (Dkt. #120, 120-1, 120-2, 120-3, 120-4, 120-5, 120-6, 120-7, 125, 126, 127).  Defendants, for their part, challenge a few specific entries, and, more broadly, seek a 10% reduction to account for the fact that Plaintiff achieved only partial success at trial.  (Def. Fee Opp. 7).

### b.   Applicable Law

Courts have recognized circumstances in which vague and/or "block-billed" time records can be insufficient to substantiate a party's claimed expenditure of time.  *See Thai-Lao Lignite (Thailand) Co., Ltd.* v. *Gov't of Lao People's Dem. Repub.*, No. 10 Civ. 5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (collecting cases).  However, the law does not require counsel to "record in great detail how each minute of [their] time was expended," but only to "identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437 n.12.  Thus, "'multiple entries comply with the Second Circuit's requirement of specificity,' because such entries are consistent with the *Carey* dictate that entries 'specify the date, hours expended, and nature of the work done.'" *Meriwether* v. *Coughlin*, 727 F. Supp. 823, 827 & n.5 (S.D.N.Y. 1989) (citing *Carey,* 711 F.2d at 1148).

Separately, the Second Circuit has recognized the authority of district courts "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'" *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quoting *Carey*, 711 F.2d at 1146). Courts can also reduce hours where attorneys are performing clerical or administrative work.  *See E.S.* v. *Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) ("A court may make [across-the-board percentage] reductions when attorneys engage in less skilled work, like filing and other administrative tasks [such as] ... faxing and mailing documents, making copies, filing, scanning, preparing documents for electronic filing, electronic file

13

management, binding documents, and Bates stamping."), *aff'd,* 487 F. App'x 619 (2d Cir. 2012) (summary order), *cited in Doe* v. *Unum Life Ins. Co. of America*, No. 12 Civ. 9327 (LAK)(AJP), 2016 WL 335867, at *7 (S.D.N.Y. Jan. 28, 2016).

Finally, travel time is generally compensated at one-half of the attorney's normal billing rate.  *See Rozell* v. *Ross-Holst*, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008).

### c.    Reductions for Partial Success

As noted, Defendants seek a 10% reduction based on the jury's verdict finding for the defense on Plaintiff's retaliation claims.  *See generally Barfield* v. *N.Y. City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (upholding reductions to reflect a plaintiff's limited degree of success).  However, a plaintiff's lack of success on some claims does not require a court to reduce the lodestar amount in situations where the successful and unsuccessful claims were interrelated and required essentially the same proof.  *Quaratino*, 166 F.3d at 425 ("Attorney's fees may be awarded for unsuccessful claims as well as successful ones, however, where they are inextricably intertwined and involve a common core of facts or are based on related legal theories." (internal quotation marks and citations omitted)); *accord Murphy* v. *Lynn*, 118 F.3d 938, 952 (2d Cir. 1997); *cf. Green* v. *Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (affirming district court decision to reduce attorneys' fees related to withdrawn claims: "Although full fees may be awarded to a partially prevailing plaintiff when the underlying

claims are intertwined, the court retains substantial discretion to take into account the specific procedural history and facts of each case.").

The Court finds that Plaintiff's discrimination and retaliation claims were inextricably intertwined; it cannot say that counsel would have spent less time had the case been framed to exclude the retaliation claims, nor can it say that Plaintiff's retaliation claims were lacking in substance. The Court further notes that although the verdict was split, the amounts awarded for the discrimination claims — $300,000 in compensatory damages against both Defendants and $25,000 in punitive damages against Defendant McAuliffe — are themselves significant. Accordingly, the Court declines to reduce the fee amount further by disallowing hours validly billed by Plaintiff's attorneys on the retaliation claims on account of the split verdict at trial.

### d. The Hours Sought by the Attorneys

#### i. Fred Lichtmacher

It is this Court's preference to ascertain the number of hours reasonably expended by considering billing entries on an individual basis, rather than imposing across-the-board percentage-based reductions. *See, e.g.*, *Echevarria* v. *Insight Medical, P.C.*, 102 F. Supp. 3d 511, 520-22 (S.D.N.Y. 2015). That is what it has striven to do here.

Mr. Lichtmacher's time entries are found in two different sets of billing records: In his own records, Mr. Lichtmacher has billed 174.08 hours on this matter, and Mr. Flamm has recorded an additional 8.27 hours on Mr. Lichtmacher's behalf. (Lichtmacher Decl.; Flamm Reply Decl. Ex. 2-3).

Turning first to the former, Defendants take issue with the manual entry method used by Mr. Lichtmacher to record his time, which method alternates between listing the number of hours worked and listing the precise time worked.  (Def. Fee Opp. 3; *see* Dkt. #120-2 (fee records)).  It is true that Mr. Lichtmacher's records are idiosyncratic, but the Court cannot say that they are incomprehensible, and it will therefore consider them.

That said, there are several time entries that the Court has disallowed in whole or in part:

- Counsel has redacted certain entries in the time records.  To the extent that the Court can discern the activity that took place (as with the entry for June 22, 2012), it has allowed the time entry despite the fact that certain topic matters may have been redacted.  In one instance, however, the Court cannot: a June 5, 2015 entry for 6 hours.  For this reason, it has disallowed the time entry in its entirety.

- Similarly, the Court has disallowed those entries that contain no description of any activity, including the entries of May 17, 2015 (two entries, for 38 and 75 minutes, respectively), and May 31, 2015 (for 185 minutes).  This amounts to an aggregate disallowance of 4.97 hours for billing entries in this category.

- Separately, and to the extent not already addressed in one of the Court's two categories of disallowance, the Court is reducing by one-third Mr. Lichtmacher's entries for the period from May 31, 2015, through June 7, 2015.  As the parties will recall, trial in the matter was originally scheduled to begin June 2, 2015.  Plaintiff's counsel advised the Court on May 30, 2015, that Plaintiff had terminated the attorney-client relationship; the Court issued an order on May 31, 2015, scheduling an in-person conference for the next day.  (Dkt. #92).  At the June 1 conference, at which Plaintiff's counsel appeared but Plaintiff did not, the Court adjourned the trial until June 8, 2015, in part to allow counsel time to locate and repair the relationship with Plaintiff.  (Dkt. #93).  On these unusual facts, it

16

would be unreasonable to charge Defendants for time spent reestablishing the attorney-client relationship. Similarly, to allow Plaintiff's counsel to bill additional legal fees for an adjournment caused by Plaintiff herself effectively amounts to a windfall. After consideration of several options, including complete disallowance, the Court has decided that a one-third reduction to the hours charged by Mr. Lichtmacher for June 1, 2, 3, 4, 6, and 7 would address the concerns outlined in this paragraph.  The aggregate time for this period is 24.17 hours;  the Court will allow 16.11 hours, and will disallow 8.06 hours.[6]

Turning now to Mr. Flamm's records of Mr. Lichtmacher's activity, the Court has accepted them to the extent they are not duplicative of entries in Mr. Lichtmacher's records.  That results in the addition of 6.02 hours at Mr. Lichtmacher's full billing rate (as set by the Court) and 2.25 hours at one-half of that rate.  (Flamm Reply Decl. Ex. 2-3).  Thus, Mr. Lichtmacher is entitled to 161.07 hours at a rate of $450 and 2.25 hours at a rate of $225, for total fees of $72,987.75.

### ii.    Jessica Acosta

In her affirmation, Ms. Acosta seeks 130.12 hours for pretrial and trial preparation at her normal rate; 2.33 hours for travel time at one-half of her normal rate; and 1.35 hours for administrative tasks at a rate of $85 per hour. (Acosta Decl. ¶¶ 5-7 & Ex. A).  Defendants do not challenge any specific entries for Ms. Acosta.

---

[6]    The Court was well within its rights to disallow the time entries for May 30, 2015, since some portion of that day was spent addressing difficulties with the attorney-client relationship.  It believes that the method it has employed addresses sufficiently the issues it has raised.

The Court retains the concerns it addressed in the previous section about work performed during the period from May 31, 2015, through June 7, 2015.  However, because (i) Ms. Acosta's time entries are sufficiently specific to permit the Court to discern entries relating to the attorney-client relationship with Plaintiff, and (ii) the Court's concerns were otherwise addressed in the reductions to Mr. Lichtmacher's hours, the Court will disallow only those billing entries that specifically address the relationship with Plaintiff.  The relevant entries are numbered 1453, 1460, 1463, 1470, and 1471; the aggregate time disallowed is 1.68 hours at Ms. Acosta's full billing rate and 0.5 hours at one-half that rate.  (*See* Acosta Decl. Ex. A)  Thus, Ms. Acosta is awarded 128.44 hours at a rate of $200; 1.83 hours at a rate of $100; and 1.35 hours at a rate of $85, for a total award of $25,985.75.

### iii.    Matthew Flamm

Piecing together the contents of two affirmations, the Court understands that Mr. Flamm seeks 142.11 hours for pretrial work billed at an hourly rate of $400; 4.13 hours for travel time billed at one-half of his normal rate; and 0.75 hours for administrative tasks billed at $100 per hour.  (Flamm Decl.; Flamm Reply Decl.; Dkt. #126 ("Flamm Fee Reply")).  Defendants pose several challenges to the fees sought.  First, Defendants object to Mr. Flamm obtaining compensation at his full rate for 11 entries for which the work performed appears to be administrative in nature.  (Def. Fee Opp. 5).[7]  Mr. Flamm

---

[7]    Originally, there were 12 entries for which the task was listed as "Admin"; one was billed at a $100 hourly rate and the remaining 11 at a $400 hourly rate.

concedes that six of these entries should be reclassified as administrative and billed at a $100 hourly rate; as to the remaining five contested entries, he contends that they were not clerical in nature and were properly billed at an attorney rate.  (Flamm Fee Reply 4-5).

On this record, the Court agrees with Defendants that, as described, these entries suggest clerical or administrative tasks.  (*See generally* Flamm Reply Decl. Ex. 4-5).  Mr. Flamm notes that the tasks in these entries "could have been categorized" in a manner that suggested they should be billed at an attorney's rate.  (Flamm Fee Reply 5).  That may be, but as contemporaneously described in the records, they warrant no more than an administrative rate. All 12 entries in this category, totaling 2.46 hours, will thus be billed at $100 per hour (rather than as Mr. Flamm suggests, 0.75 hours at $100 per hour and 1.71 hours at $400 per hour).

Second, Defendants object to Mr. Flamm's calculation of travel time. (Def. Fee Opp. 5).  Reviewing the billing records, the Court agrees with Mr. Flamm that the 4.13 hours were properly billed at one-half of his $400 hourly rate.  (Flamm Reply Decl. ¶ 12 & Ex. 6).

The Court believes that two further categories of reductions are warranted to the remaining 140.4 hours billed by Mr. Flamm.  The first pertains to Mr. Flamm's billings for the preparation and submission of Plaintiff's opposition to Defendants' summary judgment motion.  Mr. Flamm may have forgotten the rather significant problems attendant to the filing of that opposition; the Court has not.

According to the Court's scheduling order, Plaintiff's opposition papers were due on or before June 2, 2014. (Dkt. #47). On the very day they were due, Mr. Flamm sought an adjournment until June 6, 2014, citing obligations in another case. (Dkt. #52). The application was denied, and Plaintiff was given a one-day grace period, until June 3, 2014, to file the opposition. (Dkt. #53).

June 3 came and went without Plaintiff's opposition being filed. The Court's staff attempted to reach Mr. Flamm without success; ultimately, the undersigned was able to call Mr. Lichtmacher, then in his office and then working on the opposition, in order to extract from him a promise that the opposition would be filed by the end of the day on June 4, 2014. On June 4, the Court received a 16-page memorandum of law in opposition (Dkt. #54); one day later, on June 5, 2014, the Court received Plaintiff's statement pursuant to Local Rule 56.1, as well as the exhibits to her opposition (Dkt. #55-57).

The billing records for Mr. Lichtmacher reflect no hours spent on the opposition, though the Court's conversation with him suggests that at least some time was spent on it; those for Ms. Acosta reflect approximately 5.3 hours spent on the opposition. (Lichtmacher Decl. Ex.; Acosta Decl. Ex. A). Mr. Flamm, by contrast, has billed approximately 51.32 hours to the review of Defendants' summary judgment papers and the preparation of an opposition. (Flamm Decl. 40-43). To be sure, Mr. Flamm contributed to the preparation of the opposition. However, given (i) Mr. Flamm's representations to the Court in his letter of June 2 about his obligations in other cases; (ii) his AWOL status

20

when the Court attempted to reach out to him; (iii) the Court's discussions with Mr. Lichtmacher on June 4; and (iv) the quality of the ultimate work product received by the Court, a reduction to Mr. Flamm's hours in this regard is warranted. Giving him every benefit of the doubt, the Court has determined to deduct 17 hours, or approximately one-third of the time billed by Mr. Flamm to the summary judgment opposition.

The second category of reductions concerns Mr. Flamm's billings in 2015 (again, exclusive of time spent preparing the fee application). It was the Court's understanding that Mr. Flamm's involvement in this litigation ended at or about the time Plaintiff submitted her opposition to the summary judgment motion. Since Mr. Flamm has failed to explain the significance of his 2015 discussions with Plaintiff "re representation" (*see* Flamm Decl. 43), the Court will disallow these six entries, totaling 1.33 hours.

In sum, the Court will allow Mr. Flamm to receive 122.07 hours at a billing rate of $400; 4.13 hours at one-half of that rate; and 2.46 hours at a rate of $100, for a total award of $49,900.00.

### e.      The Hours Sought by the Paralegals

Paralegals Shelly Chen, Julian Giraldo, and Norman Chuk seek a total of 115.81 hours for their work on this litigation. (Dkt. #120-5, 120-6, 120-7). Defendants have interposed no objections. Reviewing the individual submissions, the Court sees no basis to reduce these hours, and will award 115.81 hours at $80 per hour, for a total of $9,264.80.

4.     **Determining the Reasonable Fees Incurred in Preparing the Fee Application**

Plaintiff's three attorneys have also sought to recover fees incurred in the preparation of the instant application.  The law is clear that a party awarded attorneys' fees under Title VII is also entitled to compensation "for time reasonably spent in preparing and defending" the fee application.  *See generally Weyant* v. *Okst*, 198 F.3d 311, 316 (2d Cir. 1999).

Mr. Lichtmacher's requests for preparation fees are somewhat confusing: In the initial fee application, he sought 10 hours "for the estimated time in litigating this motion to its conclusion."  (Pl. Fee Br. 8; *see also* Lichtmacher Decl. 1-2 (seeking "an estimated additional award of ten hours of my fees . . . for litigating this motion to its conclusion")).  However, in Plaintiff's reply submission, Mr. Lichtmacher sought "approximately [three] more hours responding to this motion."  (Pl. Fee Reply 3).  Mr. Lichtmacher does not indicate how much of the initial ten-hour period for which he sought reimbursement had been spent, nor does he offer any substantiation (e.g., contemporaneous billing records) for his claim.  Finally, and as discussed more fully with respect to Mr. Flamm, some portion of the three additional hours sought was spent correcting mistakes in, and misimpressions left by, the original submission; such time is not fairly chargeable to Defendants. Reviewing the materials submitted by Mr. Lichtmacher, the Court believes that an award of 10 hours for preparation of his component of the fee application is sufficient, and will award an additional $4,500.00.

Ms. Acosta seeks a total of 3.82 hours in connection with the fee application.  (Acosta Decl. ¶ 8; Pl. Fee Reply 3).  This request is reasonable and will be granted, resulting in the award of an additional $764.

Finally, Mr. Flamm seeks 26.2 hours in connection with the instant application, comprising, approximately, 11 hours for the initial submission and 15 hours for the reply.  (Flamm Reply Decl. ¶¶ 14-16).  To be sure, Mr. Flamm's request is the most substantiated; that said, the Court cannot help but notice the degree to which it outstrips the requests of the attorneys at Mr. Lichtmacher's firm, who worked on this litigation for a longer period of time and took the laboring oar with respect to the instant application.  More troubling is the fact that so much of Mr. Flamm's work in reply involved correcting errors in his billing records and explaining misimpressions in these records concerning the appropriate billing rate for Mr. Lichtmacher.[8]  Again giving Mr. Flamm the benefit of every doubt, the Court will award 11 hours for the initial fee application and 2 hours for the reply, for a total of 13 hours or $5,200.00.

## C.    Calculating the Costs of Litigation

Finally, Plaintiff seeks $3,330.99 in litigation costs, comprising filing fees, deposition invoices, invoices for medical records, and the like.  (Pl. Fee Br. 7-8; Dkt. #120-7, 120-8, 120-9, 120-13, 120-14, 120-15).  Defendants do

---

[8]     It is of no comfort to the Court that, according to Mr. Flamm, Mr. Lichtmacher and his firm are partly to blame for this error because of their failure to send "comments or corrections" to Mr. Flamm.  (Flamm Reply Decl. ¶ 6).  Any failures to communicate between Plaintiff's counsel cannot fairly be charged to Defendants.

not object to this figure and the Court sees no basis to disturb it.  It will therefore award costs in the amount of $3,330.99.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for attorneys' fees and costs is GRANTED IN PART, in the following amounts: (i) Mr. Lichtmacher is awarded fees in the amount of $77,487.75; (ii) Ms. Acosta is awarded fees in the amount of $26,749.75; (iii) Mr. Flamm is awarded fees in the amount of $55,100.00; and (iv) the three paralegals involved in the matter are awarded fees in the aggregate amount of $9,264.80, for a total of $168,602.30.  The Court will also award litigation costs in the amount of $3,330.99.

The Clerk is directed to terminate docket entry 118.

SO ORDERED.

Dated:      March 8, 2016
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge